**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo (SBN 144074)
dalekgalipo@yahoo.com
Benjamin S. Levine (SBN 342060)
blevine@galipolaw.com
21800 Burbank Blvd., Suite 310
Woodland Hills, CA 91367
Tel: (818) 347-3333
Fax: (818) 347-4118

**HALPERN LAW FIRM**
Loren B. Halpern (SBN 171887)
lbh@halpernlawcorp.com
28632 Roadside Dr, Ste 220
Agoura Hills, CA 91301
Tel: (818) 785-5999
Fax: (818) 609-1342

Attorneys for Plaintiff Raul Zavala

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAUL ZAVALA, <br><br> Plaintiff, <br><br> v. <br><br> COUNTY OF LOS ANGELES; and DOES 1 through 10, inclusive, <br><br> Defendants. | **Case No.  2:25-cv-6316** <br><br> **COMPLAINT FOR DAMAGES** <br><br> 1. Fourteenth Amendment – Failure to Protect (42 U.S.C. § 1983) <br> 2. Fourteenth Amendment – Denial of Medical Care (42 U.S.C. § 1983) <br> 3. Municipal Liability – Failure to Train (42 U.S.C. § 1983) <br> 4. Municipal Liability – Unconstitutional Custom, Policy, or Practice (42 U.S.C. § 1983) <br> 5. Negligence <br> 6. Failure to Summon Medical Care (Cal. Gov. Code § 845.6) <br> 7. Bane Act (Cal. Civ. Code § 52.1) <br><br> **DEMAND FOR JURY TRIAL** |

## INTRODUCTION

1.      This civil rights action arises out of the July 4, 2024, failure to protect Plaintiff Raul Zavala by Defendants COUNTY OF LOS ANGELES and DOES 1-10, inclusive, when they transferred Mr. Zavala out of protective custody and into general population at the County's Men's Central Jail in Los Angeles, despite knowing that Mr. Zavala was at risk of assault by other inmates. Predictably, this led to an easily avoidable and egregious assault by other inmates causing severe and life-altering injury to Mr. Zavala. Plaintiff seeks compensatory damages, punitive damages, attorney's fees, and costs from Defendants for violating various rights guaranteed to him by the United States Constitution, the California Constitution, and other California law.

## JURISDICTION AND VENUE

2.      This Court has original jurisdiction pursuant to 28 U.S.C. §1331 and 1343(a)(3)-(4) because Plaintiff asserts claims arising under the laws of the United States, including 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution.  This Court has supplemental jurisdiction over Plaintiff's claims arising under state law pursuant to 28 U.S.C. §1367(a), because those claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

3.      Venue is proper in this Court because all incidents, events, and occurrences giving rise to this action occurred in the County of Los Angeles, California.

## PARTIES

4.      At all relevant times, Raul Zavala ("Mr. Zavala") was a 27-year-old man residing in the County of Los Angeles. Mr. Zavala seeks damages to the extent permitted by law.

5.      At all relevant times, Defendant COUNTY OF LOS ANGELES ("COUNTY") is and was a duly organized public entity, form unknown, existing under the laws of

political subdivision for the State of California with the capacity to be sued. COUNTY is responsible for the actions, omissions, policies, procedures, practices, and customs of its various agents and agencies, and employees, including the Los Angeles County Sheriff's Department ("LASD") and its agents and employees, the Men's Central Jail ("MCJ") and its agents and employees. At all relevant times, Defendant COUNTY was responsible assuring that the actions, omissions, policies, procedures, practices, and customs of the COUNTY and its employees and agents complied with the laws of the United States and the State of California. At all relevant times, COUNTY was the employer of all named Defendants, including DOE Defendants.

6.      Defendants DOES 1-10 are deputies and correctional officers for the COUNTY, including at MCJ, including those employed as nurses and other medical professionals, as well as officers responsible for providing medical attention, medical screening, and medical care to inmates and detainees. DOES 1-10 include such officials working on behalf of COUNTY and hired through, or employed directly by, a third-party contractor. DOES 1-10 also include those responsible for transporting inmates and detainees within the facility. DOES 1-10 were at all relevant times acting under color of law within the course and scope of their employment with the LASD/COUNTY. DOES 1-10 were acting with complete authority and ratification of their principal, Defendant COUNTY at all relevant times.

7.      Defendants DOES 1-10 are sued in their individual capacities.

8.      On information and belief, Defendants DOES 1-10 were residents of the County of Los Angeles, California.

9.      In doing the acts and failing and omitting to act as hereinafter described, Defendants DOES 1-10, were acting on the implied and actual permission and consent of Defendant COUNTY, and LASD and the MCJ.

10.      The true names and capacities of DOES 1-10 are unknown to Plaintiff, who

otherwise sue these Defendants by such fictitious names. Plaintiff will seek to amend this Complaint to completely identify these Defendants when their true names and capacities have been ascertained.

11.    All of the acts complained of herein by Plaintiff against Defendants were done and performed by said Defendants by and through their authorized agents, servants, and/or employees, all of whom at all relevant times herein were acting within the course, purpose, and scope of said agency, service, and/or employment capacity. Moreover, Defendants and their agents ratified all of the acts complained of herein.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

12.    Plaintiff repeats and re-alleges each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

13.    In June of 2024, Mr. Zavala was booked into and resided in Men's Central Jail ("MCJ"). On information and belief, Mr. Zavala was a pretrial detainee at MCJ and had not been tried or convicted for the alleged crime of arrest that precipitated his detention.

14.    Mr. Zavala was a former member of a gang, from which he had dropped out prior to his 2024 detention at MCJ.

15.    Defendants were aware of Mr. Zavala's status as a gang drop-out. Defendants were also aware that active members of the gang from which Mr. Zavala had dropped out were housed at MCJ as inmates, and that these gang members posed a direct risk of harm to Mr. Zavala if he were exposed to them.

16.    Based on Mr. Zavala's status as a gang drop-out, upon his admission and booking into MCJ in June of 2024, Mr. Zavala was assigned to protective custody housing for the purpose of protecting him from inmate members of the gang from which Mr. Zavala had dropped out.

17.    On information and belief, it is common knowledge to those who manage carceral facilities such as MCJ, including Defendants, that active gang members

within their custody are likely to attempt to physically harm or kill other inmates who have dropped out from the gang, based on the drop-outs' perceived disloyalty.

18.     On or about July 4, 2025, without consulting Mr. Zavala and without any change in the circumstances that merited his placement into protective custody housing having occurred, Defendants transferred Mr. Zavala out of protective custody housing and into the general population at MCJ, which, as Defendants were aware, also housed members of the gang from which Mr. Zavala had dropped out.

19.     On information and belief, Mr. Zavala protested to jail staff, including one or more of DOES 1-10, that he should not be transferred into general population and should remain in protective custody due to the risk to his safety, including specifying that he had drop-out status, but these protests were ignored or disregarded.

20.     On July 4, 2025, soon after Mr. Zavala's transfer into general population at MCJ, and while in Defendants' custody there, Mr. Zavala was severely beaten by multiple members of the gang from which Defendants knew he had dropped out. Mr. Zavala sustained significant and grievous injuries, and experienced considerable physical pain and suffering and emotional distress.

21.     On information and belief, following Mr. Zavala's beating, while Mr. Zavala lay on the ground in extreme pain, several minutes passed before Defendants responded and medical attention was called for Mr. Zavala.

22.     On information and belief, some or all of the beating of Mr. Zavala, and of his injured condition thereafter prior to the summoning of medical attention, was captured on a surveillance video feed, which was both recorded and viewable in real-time by LASD and MCJ officials, including DOES 1-10, from one or more control rooms within MCJ.

23.     On information and belief, one or more of DOES 1-10 observed the beating in real-time via the surveillance video feed while the beating was occurring but took no action whatsoever to stop the other inmates from beating Mr. Zavala or to otherwise

assist Mr. Zavala, including by providing or summoning medical assistance, during or in the immediate aftermath of the beating. Further, on information and belief, one or more of DOES 1-10 had access to the live video feed showing the beating in real-time, but elected not to observe the live video feed, and/or elected to engage in other tasks instead of observing the live video feed, even though one or more of DOES 1-10 was responsible for observing the live video feed to ensure inmate/detainee safety. Further, on information and belief, one or more of DOES 1-10 failed to perform regular checks of the area where the beating occurred, despite having a responsibility to do so.

24.    During the beating and thereafter, including the period during which Mr. Zavala was waiting to receive medical attention, Mr. Zavala experienced extreme pain and suffering and emotional distress.

25.    As alleged above, DOES 1-10 failed to take appropriate measures to protect Mr. Zavala from violence at the hands of other inmates and/or detainees, including by keeping him in protective custody and not transferring him into the general population, and by failing to take any action to stop the beating of Mr. Zavala while it was occurring despite their contemporaneous awareness that it was occurring.

26.    DOES 1-10 also failed to provide sufficient and immediate medical attention to Mr. Zavala after he was beaten. On information and belief, provision of timely medical attention to Mr. Zavala could have mitigated his pain and suffering and the extent of his injuries.

27.    Defendants, including COUNTY and DOES 1-10, were negligent in their conduct, including but not limited to COUNTY's management of the MCJ. This negligent management includes, but is not limited to, allowing severe overcrowding conditions to persist in the MCJ; failing to properly house inmates and detainees based on the known risks posed to them, including by failing to ensure it is safe to transfer a given inmate from protective custody into the general population before doing so; and failing to appropriately identify inmates and detainees who have a known propensity

for violence, and separate them from other inmates and detainees in order to prevent foreseeable violence against other inmates and detainees. DOES 1-10 were further negligently trained with respect to housing and transferring inmates and detainees with known propensities for violence or known risks of being subjected to violence, with respect to preventing and stopping violence against inmates and detainees, and with respect to providing or summoning medical care for injured inmates and detainees.

28.    Each of the named and unnamed Defendants were integral participants in the failure to protect Mr. Zavala, the denial of medical care to Mr. Zavala, the negligent treatment of Mr. Zavala, and other violations of Mr. Zavala's rights, or, alternatively, failed to intervene to prevent these violations, despite each Defendant having a responsibility and realistic opportunity to intervene to prevent these violations.

29.    On December 17, 2024, Plaintiff filed a timely claim under Government Code Section 911.2 et al.

30.    Plaintiff's claim was denied by operation of law on January 31, 2024.

31.    As of the date of this filing, neither Plaintiff nor his counsel have received any response to Plaintiff's claim.

## FIRST CLAIM FOR RELIEF

### Fourteenth Amendment – Failure to Protect (42 U.S.C. § 1983)

### Plaintiff Against Defendants DOES 1-10

32.    Plaintiff repeats and re-alleges each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

33.    The Due Process Clause of the Fourteenth Amendment to the United States Constitution protects pretrial detainees from conditions of confinement or failures to prevent harm that amount to punishment without due process, including where jail or prison officials are deliberately indifferent to known risks of harm to detainees.

34.    Defendants DOES 1-10 intentionally housed Mr. Zavala with other inmates

who were known to be members of a gang from which Mr. Zavala was known to have dropped out, including individuals with a known proclivity for violence.

35.     As alleged above, one or more of Defendants DOES 1-10 had actual knowledge of Mr. Zavala's status as a gang drop-out and of the acute risk of assault posed to Mr. Zavala if he were transferred out of protective custody and into the MCJ general population.

36.     Despite such knowledge, one or more of Defendants DOES 1-10 intentionally transferred Mr. Zavala out of protective custody and into the MCJ general population. These Defendants were objectively deliberately indifferent to the known risk that Mr. Zavala would be seriously injured as a result of transferring him into the general population, due to the specific likelihood that he would be assaulted there by members of the gang of which he was formerly a member. These actions and omissions on the part of these Defendants were sufficiently harmful to evidence deliberate indifference to Mr. Zavala's serious risk of harm, and the indifference to Mr. Zavala's risk of harm as alleged above was substantial.

37.     As alleged above, one or more of Defendants DOES 1-10 had actual knowledge of the beating of Mr. Zavala by other inmates/detainees while it was ongoing. Further, as alleged above, one or more of Defendants DOES 1-10 were responsible for observing the area where the beating occurred via the live video feed but instead elected not to do so. Further, as alleged above, one or more of Defendants DOES 1-10 were responsible for conducting regular in-person checks of the area but instead elected not to do so.

38.     Despite one or more of DOES 1-10 having actual knowledge of the fact that Mr. Zavala was being severely beaten while the beating was ongoing, these Defendants took no action whatsoever to intervene to stop the beating at any time, including by personally responding to the area where the beating was occurring or by calling for other LASD and/or MCJ staff to respond there and stop the beating. These

Defendants were objectively deliberately indifferent to the known risk that Mr. Zavala would be seriously injured, and would be further injured as the beating progressed, when they took no action to respond or to request a response to the beating while it was ongoing. These actions and omissions on the part of these Defendants were sufficiently harmful to evidence deliberate indifference to Mr. Zavala's serious risk of harm, and the indifference to Mr. Zavala's risk of harm as alleged above was substantial.

39.    Further, despite DOES 1-10 having a responsibility to monitor the live video feed of the area and/or conduct regular in-person checks of the area, one or more of DOES 1-10 elected not to perform these duties and to instead engage in other activities. These Defendants were objectively deliberately indifferent to the known risk that inmates/detainees, including Mr. Zavala, would be attacked there and be seriously injured as a result, but nevertheless elected not to fulfill their responsibilities to observe the area via video feed and/or through in-person checks.

40.    Defendants DOES 1-10 thus made intentional decisions regarding Mr. Zavala's confinement as alleged above. These conditions put Mr. Zavala at a substantial risk of suffering serious harm. DOES 1-10 did not take reasonable measures to protect Mr. Zavala from this risk despite obvious consequences of not acting upon the ongoing beating Mr. Zavala was suffering, and by not taking action to protect Mr. Zavala from same, DOES 1-10 caused Mr. Zavala's injury.

41.    Mr. Zavala's risk of harm was serious, in that the failure to respond to the beating of Mr. Zavala by other inmates/detainees while it was ongoing resulted in serious injury to Mr. Zavala, and in significant pain and suffering.

42.    Mr. Zavala was entitled to receive protection from the known risk of harm to his life while in the care and custody of the COUNTY while detained/incarcerated at MCJ. In doing the acts complained of, Defendants DOES 1-10 failed to protect Mr. Zavala from a known risk of serious harm in violation of his rights under the Due

Process Clause of the Fourteenth Amendment.

43.     Defendants DOES 1-10 knew that failure to protect Mr. Zavala could result in Mr. Zavala being seriously injured or killed, but disregarded that serious risk, directly causing Mr. Zavala great bodily harm.

44.     Each of the several aforementioned actions and omissions of Defendants DOES 1-10 along with other undiscovered conduct, shocks the conscience, in that they acted with deliberate indifference to the constitutional rights of Mr. Zavala. DOES 1-10 were deliberately indifferent to a substantial risk of serious harm to Mr. Zavala. Defendants DOES 1-10's conduct served no legitimate penological purpose.

45.     Defendants DOES 1-10 are liable for the failure to protect Mr. Zavala, and for his injuries, either because they were integral participants in the failure to protect, or because they failed to intervene to prevent such violations.

46.     As a direct and proximate result of the aforementioned conduct, Mr. Zavala suffered injuries, including pain and suffering, and lost earning capacity.

47.     The conduct of Defendants DOES 1-10 was willful, wanton, malicious, and done with a reckless disregard for the rights and safety of Mr. Zavala, and therefore warrants the imposition of exemplary and punitive damages as to these Defendants.

48.     As a result of their violation of Plaintiff's Fourteenth Amendment rights, Defendants are liable to Plaintiff for compensatory damages under 42 U.S.C. § 1983, including for past and future physical pain and mental suffering, loss of enjoyment of life, disfigurement, physical impairment, inconvenience, grief, anxiety, humiliation, and emotional distress; past and future medical expenses; and lost income and earning capacity.

49.     Plaintiff also seeks attorney's fees and costs under this claim.

/ / /

/ / /

/ / /

## SECOND CLAIM FOR RELIEF

### Fourteenth Amendment – Denial of Medical Care (42 U.S.C. § 1983)

### Plaintiff Against Defendants DOES 1-10

50.     Plaintiff repeats and re-alleges each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

51.     The Due Process Clause of the Fourteenth Amendment to the United States Constitution protects pretrial detainees from conditions of confinement or failures to prevent harm that amount to punishment without due process, including where jail or prison officials are deliberately indifferent to detainees' medical needs.

52.     As alleged above, on information and belief, Defendants DOES 1-10 had actual knowledge of the beating of Mr. Zavala while it was ongoing, and of his urgent need for medical care thereafter, based on their knowledge of the beating and of the likelihood that Mr. Zavala had suffered serious injuries as a result.

53.     Despite Defendants DOES 1-10 having actual knowledge of Mr. Zavala's serious injuries and his urgent need for medical care following the beating, DOES 1-10 failed to take action to provide medical care, or to secure the provision of prompt medical care, to Mr. Zavala during that time, despite the potential for this to exacerbate Mr. Zavala's injuries. This demonstrates deliberate indifference.

54.     Defendants DOES 1-10 were objectively indifferent to Mr. Zavala's serious medical needs when they failed to ensure that prompt and adequate medical attention was provided to him upon being beaten as described herein. These actions and omissions on the part of these Defendants were sufficiently harmful to evidence deliberate indifference to Mr. Zavala's serious and immediate medical needs, and the indifference to Mr. Zavala's medical needs as alleged above was substantial.

55.     Defendants DOES 1-10 thus made intentional decisions regarding Mr. Zavala's confinement as alleged above. These conditions put Mr. Zavala at a substantial risk of suffering serious harm. DOES 1-10 did not take reasonable measures to abate this risk

despite obvious consequences of not treating Mr. Zavala's injuries, and by not treating Mr. Zavala's injuries, DOES 1-10 caused Mr. Zavala exacerbation of his injuries, further injury, and further extreme pain and suffering.

56.    Mr. Zavala's medical need was serious, in that the failure to treat Mr. Zavala's injuries resulted in the worsening thereof. His need was obvious, in that he was visibly beaten by other inmates/detainees.

57.    Mr. Zavala was entitled to receive necessary medical attention while in the care and custody of the COUNTY while detained/incarcerated at MCJ.  In doing the acts complained of, Defendants DOES 1-10 deprived Mr. Zavala of urgently needed medical care in violation of his rights under the Due Process Clause of the Fourteenth Amendment.

58.    Defendants DOES 1-10 knew that failure to provide timely medical treatment to Mr. Zavala could result in Mr. Zavala suffering further injury, but disregarded that serious medical need, directly causing Mr. Zavala great bodily harm, pain and suffering.

59.    Each of the several aforementioned actions and omissions of Defendants DOES 1-10 along with other undiscovered conduct, shocks the conscience, in that they acted with deliberate indifference to the constitutional rights of Mr. Zavala. DOES 1-10 were deliberately indifferent to a substantial risk of serious harm to or serious medical needs of Mr. Zavala. Defendants DOES 1-10's conduct served no legitimate penological purpose.

60.    Defendants DOES 1-10 are liable for the denial of medical care to Mr. Zavala, and for his injuries, either because they were integral participants in the denial of medical care, or because they failed to intervene to prevent these violations.

61.    As a direct and proximate result of the aforementioned conduct, Mr. Zavala suffered injuries, including pain and suffering, and lost earning capacity.

62.    The conduct of Defendants DOES 1-10 was willful, wanton, malicious, and

done with a reckless disregard for the rights and safety of Mr. Zavala, and therefore warrants the imposition of exemplary and punitive damages as to these Defendants.

63.    As a result of their violation of Plaintiff's Fourteenth Amendment rights, Defendants are liable to Plaintiff for compensatory damages under 42 U.S.C. § 1983, including for past and future physical pain and mental suffering, loss of enjoyment of life, disfigurement, physical impairment, inconvenience, grief, anxiety, humiliation, and emotional distress; past and future medical expenses; and lost income and earning capacity.

64.    Plaintiff also seeks attorney's fees and costs under this claim.

### THIRD CLAIM FOR RELIEF

**Municipal Liability – Failure to Train (42 U.S.C. § 1983)**

**(By All Plaintiffs Against Defendant COUNTY)**

65.    Plaintiff repeats and re-alleges each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

66.    The acts of Defendants DOES 1-10 deprived Plaintiff of his particular rights under the United States Constitution.

67.    Defendants DOES 1-10 acted under color of law.

68.    On information and belief, Defendant COUNTY failed to properly and adequately train Defendants DOES 1-10 on subject matters COUNTY knew DOES 1-10 were virtually certain to have to address in the course of their work for COUNTY, including but not limited to protection of inmates/detainees from violence at the hands of other inmates/detainees (including proper housing) and the provision of medical care to injured inmates/detainees.

69.    The training policies of Defendant COUNTY were not adequate to train its deputies and correctional officers at LASD and the MCJ to handle the usual and recurring situations with which they must deal, including preventing and responding to inmate-on-inmate violence and the provision of prompt and adequate medical care.

As stated above, DOES 1-10 knowingly and deliberately transferred Mr. Zavala from protective custody into the general population, despite their knowledge of his entitlement to protective custody status, despite his protests regarding his safety, and without any change in circumstance applicable to Mr. Zavala or regarding the necessity of protective custody. Further, on information and belief, while Mr. Zavala was being beaten by other inmates/detainees, DOES 1-10 did not respond, whether by personally intervening to stop the beating or otherwise, and DOES 1-10 also did not promptly provide or summon medical care for Mr. Zavala after he had been beaten and was critically injured. On information and belief, all of these critical omissions are clear violations of the policies of LASD and the MCJ, and Defendant COUNTY did not adequately train Defendants DOES 1-10 with regard to said policies.

70.    Defendant COUNTY was deliberately indifferent to the obvious consequences of its failure to train its officers adequately.

71.    The failure of Defendant COUNTY to provide adequate training caused the deprivation of Mr. Zavala's rights by Defendants DOES 1-10; that is, Defendant COUNTY's failure to train is so closely related to the deprivation of Mr. Zavala's rights as to be the moving force that caused his ultimate injuries.

72.    As a direct and proximate result of the aforementioned conduct, Mr. Zavala suffered injuries, including pain and suffering, and lost earning capacity.

73.    As a result of their violation of Plaintiff's Fourteenth Amendment rights, Defendants are liable to Plaintiff for compensatory damages under 42 U.S.C. § 1983, including for past and future physical pain and mental suffering, loss of enjoyment of life, disfigurement, physical impairment, inconvenience, grief, anxiety, humiliation, and emotional distress; past and future medical expenses; and lost income and earning capacity.

74.    Plaintiff also seeks attorney's fees and costs under this claim.

/ / /

**FOURTH CLAIM FOR RELIEF**

**Municipal Liability – Unconstitutional Custom, Policy, or Practice**

**(42 U.S.C. § 1983)**

**Plaintiff Against Defendant COUNTY**

75.     Plaintiff repeats and re-alleges each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

76.     Defendants DOES 1-10 acted pursuant to an expressly adopted official policy or a longstanding practice or custom of Defendant COUNTY, including unconstitutional policies of not properly applying or enforcing inmates'/detainees' entitlement to protective custody status based on known and legitimate threats to their safety; of not adequately monitoring video feeds of inmate/detainee areas in order to ensure protection of inmates/detainees from violence and provision of urgently needed medical care; of failing to intervene in fights among and against inmates/detainees and instead to allow fights to continue until victims are severely injured or killed; of delaying or denying provision of medical care to inmates/detainees who are injured by other inmates/detainees; and of allowing overcrowding of jails and of common areas, including at the MCJ, a facility that for years has been notorious for overcrowding and related substandard conditions and has consequently been slated for purported demolition that has yet to occur, enabling increased violence against inmates/detainees and resulting in further inadequate monitoring of inmates/detainees by jail staff.

77.     On information and belief, Defendants DOES 1-10 were not disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with the attack on Mr. Zavala.

78.     Defendant COUNTY, together with various other officials, whether named or unarmed, had either actual or constructive knowledge of the deficient policies, practices and customs alleged in paragraphs above. Despite having knowledge as stated above, these Defendants condoned, tolerated and through actions and inactions

thereby ratified such policies. Said Defendants also acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to the constitutional rights of Mr. Zavala and other individuals similarly situated.

79.    Furthermore, the policies, practices, and customs implemented, maintained, and still tolerated by Defendant COUNTY were affirmatively linked to and were a significantly influential force behind the injuries of Mr. Zavala.

80.    As a direct and proximate result of the aforementioned conduct, Mr. Zavala suffered injuries, including pain and suffering, and lost earning capacity.

81.    As a result of their violation of Plaintiff's Fourteenth Amendment rights, Defendants are liable to Plaintiff for compensatory damages under 42 U.S.C. § 1983, including for past and future physical pain and mental suffering, loss of enjoyment of life, disfigurement, physical impairment, inconvenience, grief, anxiety, humiliation, and emotional distress; past and future medical expenses; and lost income and earning capacity.

82.    Plaintiff also seeks attorney's fees and costs under this claim.

## FIFTH CLAIM FOR RELIEF

### Negligence

### Plaintiff Against All Defendants

83.    Plaintiff repeats and re-alleges each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

84.    Defendants DOES 1-10 were charged with a duty to use reasonable care to prevent harm or injury to others. This duty includes taking reasonable measures to prevent attacks on inmates/detainees in their custody, including by properly maintaining and enforcing housing restrictions and related protections for inmates/detainees who are known to be at risk of attack; intervening to stop attacks on inmates/detainees in their custody; providing prompt and adequate medical care to injured inmates/detainees in their custody; and otherwise protecting inmates/detainees

from reasonably foreseeable harm.

85.      Defendant COUNTY was charged with a duty to ensure the safety of inmates/detainees in its detention facilities, including MCJ. This duty includes training and requiring correctional staff, including DOES 1-10, to adequately maintain and enforce housing restrictions and related protections for at-risk inmates/detainees; training and requiring correctional staff, including DOES 1-10, to monitor inmate/detainee areas to ensure inmates/detainees are not subjected to violence at the hands of other inmates/detainees; training and requiring correctional staff, including DOES 1-10, to intervene and/or summon assistance to prevent or stop attacks against inmates/detainees in its custody; training and requiring correctional staff, including DOES 1-10, to provide or call for the provision of medical care to inmates/detainees in their custody who they know, or reasonably should know, are injured or are otherwise in need of urgent medical attention; and maintaining detention facilities that are adequate to maintain safety of inmates/detainees, including by not allowing overcrowding conditions and maintaining proper and adequate security measures in inmate/detainee areas, and in areas for known violent inmates/detainees in particular.

86.      Defendants DOES 1-10 and COUNTY breached their duty of care. The actions and inactions of Defendants DOES 1-10 were negligent and reckless, including but not limited to, the complete failure to recognize and honor the need for Mr. Zavala to be kept in protective custody due to his known status as a gang drop-out, even over Mr. Zavala's objections and confirmations of his risk of harm and the reason for it; failure to intervene or otherwise respond to prevent or stop the attack on Mr. Zavala by other inmates/detainees despite their awareness of the attack while it was ongoing (and/or their negligent failure to monitor the area, including via video feed, such as would have made them aware of the attack); and failure to promptly provide or call for the provision of medical care for Mr. Zavala after the attack had ended despite their awareness of the attack and Mr. Zavala's resulting injuries and critical condition

(and/or their negligent failure to monitor the area, including via video feed, such as would have made them aware of the attack and Mr. Zavala's resulting injuries).

87.    The actions and inactions of Defendants DOES 1-10 and COUNTY were further negligent and reckless, including but not limited to, these Defendants' failure to ensure the adequate monitoring of inmate/detainee areas at all times in order to prevent reasonably foreseeable violence by, against, and among inmates/detainees; COUNTY's failure to ensure adequate staffing at MCJ in order to ensure adequate monitoring and protection of inmates/detainees and to ensure timely provision of medical care to injured inmates/detainees; COUNTY's failure to ensure inmate/detainee areas are not overcrowded, so as to prevent or reasonably limit fights and/or other violence that is reasonably foreseeable when inmates/detainees are in extremely close quarters, particularly when those inmates/detainees are known by COUNTY and its staff to include both active gang members and drop-outs from the same gangs; COUNTY's failure to adequately train jail staff, including MCJ staff, to prevent and stop violence by, against, and among inmates/detainees; and COUNTY's failure to adequately train jail staff, including MCJ staff, to provide or summon timely medical care for injured inmates/detainees. Moreover, COUNTY failed to ensure that adequate numbers of employees with appropriate education and training were available to meet the needs of and protect the rights of Mr. Zavala.

88.    As a direct and proximate result of Defendants' conduct as alleged above, and other undiscovered negligent conduct, Mr. Zavala was caused to suffer severe pain and suffering.

89.    COUNTY is vicariously liable for the wrongful acts of Defendants DOES 1-10 pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of employment if the employee's act would subject him or her to liability.

90.    As a result of their violation of Plaintiff's rights, Defendants are liable to

Plaintiff for compensatory damages under California law, including for past and future physical pain and mental suffering, loss of enjoyment of life, disfigurement, physical impairment, inconvenience, grief, anxiety, humiliation, and emotional distress; past and future medical expenses; and lost income and earning capacity.

<u>**SIXTH CLAIM FOR RELIEF**</u>

**Failure to Summon Medical Care (Cal. Gov. Code § 845.6)**

**Plaintiff Against All Defendants**

91.    Plaintiff repeats and re-alleges each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

92.    Pursuant to California Government Code Section 845.6, a public employee, and the public entity where the employee is acting within the scope of his employment, is liable if the employee knows or has reason to know that the inmate or prisoner is in need of immediate medical care and fails to take reasonable action to summon such medical care.

93.    On information and belief, Defendants DOES 1-10 were aware of Mr. Zavala's medical emergency, in that DOES 1-10 were aware of the beating of Mr. Zavala by other inmates/detainees both while the beating was occurring and immediately thereafter, and were aware Mr. Zavala was seriously injured and in urgent need of medical care. In other words, as alleged above, Mr. Zavala's medical emergency was obvious. Defendants are not entitled to immunity where the inmate is in obvious need of medical care.

94.    Despite DOES 1-10's actual knowledge that Mr. Zavala was in need of immediate medical care as alleged above, these Defendants failed to promptly (1) conduct any medical assessment of Mr. Zavala or call for one to be conducted; (2) summon emergency medical assistance for Mr. Zavala, both during the time when he was being beaten by other inmates/detainees and thereafter; or (3) order that Mr. Zavala be immediately transported to a hospital or other medical care facility where

Mr. Zavala could receive urgently needed treatment.

95.    COUNTY is vicariously liable for the wrongful acts of DOES 1-10 pursuant to Section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of employment if the employee's act would subject him or her to liability. California Government Code Section 820(a) further states that except as otherwise provided by statute (including Section 820.2), a public employee is liable by his act or omission to the same extent as a private person. Pursuant to California Government Code Section 844.6, a public employee or the government entity is not immune from liability for injury proximately caused by its employee's negligent conduct, and specifies that a public entity has a duty to pay a judgment. Moreover, a public employee, and the public entity where the employee is acting within the scope of his employment, is liable if the employee knows or has reason to know that the inmate is in need of immediate medical care and he fails to take reasonable action to summon such medical care.

96.    As a direct and proximate result of the aforementioned conduct, Mr. Zavala suffered injuries, including pain and suffering, and lost his earning capacity.

97.    As a result of their violation of Plaintiff's rights, Defendants are liable to Plaintiff for compensatory damages under California law, including for past and future physical pain and mental suffering, loss of enjoyment of life, disfigurement, physical impairment, inconvenience, grief, anxiety, humiliation, and emotional distress; past and future medical expenses; and lost income and earning capacity.

## SEVENTH CLAIM FOR RELIEF

### Bane Act (Cal. Gov. Code § 52.1)

### Plaintiff Against All Defendants

98.    Plaintiff repeats and re-alleges each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

99.    California Civil Code Section 52.1 ("the Bane Act"), prohibits any person from intentionally interfering with another person's constitutional rights. An intent to violate a person's constitutional rights can be shown by a reckless disregard for that person's constitutional rights.

100.   Here, Defendants DOES 1-10 acted with reckless disregard for Mr. Zavala's constitutional rights as set forth above. In particular, these Defendants had specific knowledge of the fact that Mr. Zavala was at risk of being attacked by members of his former gang if he was transferred into the MCJ general population, yet callously did so anyway over his clear objections, which explained the basis for his risk. On information and belief, these Defendants also were aware that Mr. Zavala was being beaten by other inmates/detainees while the beating was occurring, and knew that it had occurred thereafter, but failed to promptly take action to protect him or to provide him urgent medical care that he obviously needed, demonstrating reckless disregard for Mr. Zavala's rights.

101.   When Defendants DOES 1-10 engaged in their misconduct and inactions as alleged above, these Defendants acted with reckless disregard for Mr. Zavala's constitutional rights, including his constitutional rights to be protected from violence at the hands of other inmates/detainees and to timely and adequate medical attention.

102.   The conduct of Defendants DOES 1-10 as alleged above was a substantial factor in causing Plaintiff's harms, losses, injuries, and damages.

103.   COUNTY is vicariously liable for the wrongful acts of DOES 1-10 pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

104.   The conduct of Defendants DOES 1-10 was malicious, wanton, oppressive, and accomplished with a conscious disregard for Mr. Zavala's rights, justifying an award of exemplary and punitive damages as to these Defendants.

105.   As a direct and proximate result of the aforementioned conduct, Mr. Zavala suffered injuries, including pain and suffering, and lost his earning capacity.

106.   As a result of their violation of Plaintiffs' rights, Defendants are liable to Plaintiffs for compensatory damages under California law, including for past and future physical pain and mental suffering, loss of enjoyment of life, disfigurement, physical impairment, inconvenience, grief, anxiety, humiliation, and emotional distress; past and future medical expenses; and lost income and earning capacity.

107.   Plaintiff also seeks reasonable costs on this claim. Under the provisions of Cal. Civ. Code § 52, Defendants are also liable for reasonable attorney's fees and a civil penalty, including a multiplier.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests entry of judgment in his favor and against Defendants COUNTY OF LOS ANGELES and DOES 1-10, as follows:

A.    For compensatory damages under federal and state law, in an amount to be proven at trial;

B.    For other general damages in an amount according to proof at trial;

C.    For other non-economic damages in an amount according to proof at trial;

D.    For other special damages in an amount according to proof at trial;

E.    For punitive damages against the individual defendants in an amount to be proven at trial;

F.    Attorney's fees pursuant to 42 U.S.C. § 1988;

G.    Attorney's fees and costs pursuant to Cal. Civ. Code § 52.1(h)

H.    For interest;

I.    For reasonable costs of this suit; and

J.    For such further other relief as the Court may deem just, proper, and appropriate.


DATED: July 10, 2025          **LAW OFFICES OF DALE K. GALIPO**


By:   _/s/ Dale K. Galipo_____
DALE K. GALIPO
BENJAMIN S. LEVINE
Attorneys for Plaintiff

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff hereby demands a trial by jury on all issues.


DATED: July 10, 2025         **LAW OFFICES OF DALE K. GALIPO**


By:   _/s/ Dale K. Galipo_
       DALE K. GALIPO
       BENJAMIN S. LEVINE
       Attorneys for Plaintiff